UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

LATASHA TRANSRINA KEBE,

          Debtor.

_____/

Case No.: 23-14082-SMG
Chapter 11
Subchapter V

### CREDITOR BELCALIS MARLENIS ALMÁNZAR'S MOTION TO (I) ENFORCE CONFIRMED PLAN AND CONFIRMATION ORDER, AND (II) IMPOSE SANCTIONS, INCLUDING ATTORNEYS' FEES AND COSTS

Creditor Belcalis Marlenis Almánzar, ("**Ms. Almánzar**"), by and through undersigned counsel, hereby moves for entry of an order (I) enforcing Debtor's confirmed Subchapter V plan of reorganization [D.E. 186] and the Confirmation Order [D.E. 197], and (II) awarding sanctions, including attorneys' fees and costs. In support thereof, Ms Almánzar states as follows:

### PRELIMINARY STATEMENT

This Motion arises from a continued and unabated pattern of deliberate, calculated, and contumacious violations by Debtor Latasha Transrina Kebe ("**Debtor**" or "**Ms. Kebe**"), of the non-disparagement provisions of her own confirmed Subchapter V Plan and the Confirmation Order, provisions she *negotiated, accepted, and agreed to* as a condition of preserving her bankruptcy case. ***The latest violation occurred just today, and less than an hour before this motion was filed.***

Since the Plan was confirmed on March 4, 2025, Debtor has engaged in a relentless course of conduct designed to target and harass Ms. Almánzar and her family through thinly coded references, scantily veiled commentary, and strategic provocation all while knowing that

1

her audience of over one million social media followers will immediately and universally identify Ms. Almánzar as the subject. When caught, Debtor belatedly removes the offending content, only to repeat the same conduct days, weeks, or months later. Ms. Almánzar's counsel has been forced to issue no less than three formal written violation notices, monitor Debtor's social media platforms on an ongoing basis, and expend substantial time and legal fees in a futile "cat and mouse" game that the Debtor shows no sign of ending voluntarily. As she did the entirety of the underlying defamation case, and as she has done with respect to this bankruptcy proceeding, Debtor believes she is above the law and is not required to follow the orders or admonitions of the Court or comply with the terms of her own agreement. For example, in addition to the clear provisions of the non-disparagement provisions in the Confirmation Order, at the confirmation hearing, the Court advised Debtor:

> The COURT: And, you know, I don't know a lot about your business, or what got you into this. All I'm going to say is to be careful, and this is an opportunity for you to, again, control how you deal with this problem, okay? And don't squander it, okay? **You made promises, comply with them**, and that will help you deal with this problem, okay? So, I wish you luck.

Confirmation Hr'g Tr. 17:22 – 18:-3 (emphasis added).

***

> The COURT: So, everybody, congratulations on getting it done. I know there's no trust, **so what you have is an agreement, you have a contract. Abide by it, okay?** If everybody does what they're supposed to, this will get done, and, Ms. Kebe, you will go a long way toward dealing with this problem again in a manner that you control, and that is certain, and that you know what you need to do okay? But if there's an issue, I'm sure I'm going to hear about it and the, you know, the consequences will be what they will be, okay?

Confirmation Hr'g Tr.: 19-18 – 20:3 (emphasis added).

Debtor's pattern of antagonism described herein makes clear she ignored the Court's admonition. And what makes this pattern of defiance particularly egregious is not merely the

2

violations themselves, but what Debtor has openly admitted in public broadcasts. On multiple occasions, in livestreams, radio interviews, and social media posts viewed collectively by hundreds of thousands of people, Debtor has made unambiguous statements of her intent: she flouts the non-disparagement clause, and she has made clear that she intends to resume harassment of Ms. Almánzar once her debt is paid off. These are not the actions of someone who has inadvertently stumbled into violations. These are the actions of someone who agreed to a court-confirmed obligation under duress of dismissal, never intended to honor it in spirit, and is openly attempting to engineer a path around it. These are the actions of someone who has no respect for obligations she agreed to in the Plan, the Confirmation Order or this Court.

Importantly, the cure period in Paragraph 14(b) of the Confirmation Order was designed for a singular narrow and specific purpose: to give Debtor an opportunity to remove content *about individuals she did not know were family members of Ms. Almánzar*. It was never intended as a general license to post knowingly prohibited content, wait to be caught, remove it, and repeat. Debtor has weaponized the cure provision as a business model: post patently false, disparaging, and defamatory content about Ms. Almánzar and her family, generate tens of thousands of views and corresponding advertising revenue, then remove the post after receiving a notice and after the damage is already done, the views are already collected, and the screenshots and re-posts by other content creators have already amplified the harm beyond recall. [1]

---

[1] Empirical research confirms that retraction or removal of harmful content (in other contexts) does not eliminate its impact. *See, e.g.*, Serghiou et al., *Media and Social Media Attention to Retracted Articles According to Altmetric*, 6 PLoS One e248925 (2021), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC8115781/ (finding that retracted articles continued to attract substantial attention post-retraction, while retraction notices received comparatively limited dissemination). In the context of social media, where screenshots, reposts, and algorithmic amplification occur immediately upon publication, subsequent deletion cannot reliably undo reputational harm already inflicted.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

This Court has full authority and, respectfully, the obligation to put an end to this pattern. A confirmed plan is an order of this Court. Violations of court orders have consequences. Ms. Almánzar respectfully submits that those consequences are long warranted and past overdue.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2) as a matter concerning the administration of the estate, enforcement of a confirmed plan, and adjustment of the debtor-creditor relationship.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This Court retains jurisdiction to enforce the Plan and Confirmation Order pursuant to ¶ 22 of the Confirmation Order, which expressly reserves jurisdiction to "resolve disputes with respect to any and all injunctions created as a result of confirmation of the Plan" and to "enter such orders as the Court deems necessary or appropriate with respect to enforcement of the Plan."

## BACKGROUND

### A.  The Plan, the Confirmation Order, and the Non-Disparagement Clause

4.      On March 4, 2025, this Court entered the Confirmation Order [D.E. 197] confirming Debtor's Third Amended Subchapter V Plan of Reorganization [D.E. 186]. The Plan and Confirmation Order are binding upon Debtor and all creditors as orders of this Court. 11 U.S.C. § 1141(a).

4

5.      Ms. Almánzar holds an allowed, non-dischargeable[2] defamation judgment (the "**Defamation Judgment**") in the amount of $3,911,680.95, arising from Debtor's sustained and malicious campaign of defamation against Ms. Almánzar, and as such, Ms. Almánzar alone comprises 98.28% of the entire unsecured creditor body.[3] The Defamation Judgment was entered by the United States District Court for the Northern District of Georgia and is expressly excepted from discharge pursuant to Paragraph 6 of the Confirmation Order.

6.      As a material condition of the Plan, Ms. Almánzar agreed to a conditional injunction staying enforcement of the Defamation Judgment against Debtor and certain non-debtor parties, including Cheickna Kebe and Yelen Entertainment, LLC, for the duration of the Plan, but only so long as Debtor remains in full compliance with the Plan's terms and is not in uncured default. Confirmation Order ¶¶ 7, 8.

7.      In exchange for this extraordinary protection, a stay of enforcement of a nearly $4 million non-dischargeable judgment, Debtor accepted, among other obligations, the non-disparagement clause set forth in Paragraph 14 of the Confirmation Order (the "**Non-Disparagement Clause**"). That clause prohibits Debtor and all related parties, including Cheickna Kebe and Yelen Entertainment, LLC, from publicly making, publishing, or communicating, whether *directly or indirectly*, any derogatory, disparaging, or defamatory statements, remarks, or comments about Ms. Almánzar, her family members, or any entities

---

[2] Contrary to misrepresentations made by Debtor to her social media followers and/or in interviews, Debtor knows full well that the estimated *minimum* payment of $1,178,312.34 required during the five-year term of the Plan does NOT mean that Debtor only has to pay $1,178,312.34 in full satisfaction of the nondischargeable Defamation Judgment. As this Court is well aware, the remaining amount of the nearly $4 million Defamation Judgment will remain a liability of Debtor's, and it is for that reason Debtor has recently taken to describing to her followers her "15 year plan" to pay off the remainder of the Defamation Judgment by filing successive bankruptcy cases – prior to her new idea to enlist her followers to pay for her own misconduct through a GoFundMe campaign created, as Debtor describes it, "out of spite."

[3] *See* Plan at page 8 of 34.

5

owned or controlled by Ms. Almánzar, in any public forum or medium, including social media. Confirmation Order ¶ 14.

8.      Paragraph 14(a) of the Confirmation Order further provides that "[t]he Debtor shall ensure that no content related to Ms. Almánzar and/or her family, *whether explicitly or implicitly*, will be published or disseminated on any of the Debtor's social media accounts, websites, blogs, or other online communication channels, including without limitation 'unwinewithtashak,' 'The Wine Cellar Podcast,' or 'Tasha K Live.'" (Emphasis added.)

9.      Paragraph 14(b) provides a narrow cure mechanism applicable only when a "Prohibited Comment" is made with respect to an "**Unidentified** Almánzar Party" – that is, a family member of Ms. Almánzar not known to Debtor or the general public to be related to Ms. Almánzar. In that limited circumstance, Debtor has forty-eight (48) hours from receipt of notice to remove the content. This cure provision was never intended, and plainly does not apply, to direct or indirect commentary about Ms. Almánzar herself or about individuals publicly and universally known to be her family members.

10.     Paragraph 14(c) provides that "[f]ailure to implement a timely cure to any violation within this provision shall constitute a material breach of the Plan and may result in additional legal remedies sought by Ms. Almánzar, including without limitation the legal right to seek dismissal of Debtor's bankruptcy case or conversion to a Chapter 7 of the Bankruptcy Code."

11.     It is critical to understand the context in which the Non-Disparagement Clause was agreed to. Prior to confirmation, Debtor's own counsel argued in court filings[4] that Ms.

---

[4] See *Response in Opposition to Belcalis Marlenis Almánzar's Motion to Dismiss Chapter 11 Bankruptcy Case or in the Alternative Convert Case to a Case Under Chapter 7 of the Bankruptcy Code* at pp. 3-4 (Dkt. No. 176). For

6

Almánzar's proposed non-disparagement clause was "so broad that it would undermine Debtor's Career" and that Ms. Almánzar was "seeking to sabotage Debtor's Career through unreasonable restrictions on her First Amendment rights." Ms. Almánzar then withdrew her objection to confirmation of a plan in exchange for the Non-Disparagement Clause being incorporated into the agreed Plan. Debtor, through counsel, accepted these terms. She cannot now claim to be surprised by or opposed to obligations she voluntarily accepted as the price of preserving her bankruptcy protection. And as noted by the Court at the hearing held on January 9, 2025, it was "entirely reasonable" for Ms. Almánzar to insist on the terms of a non-disparagement clause, and that such a clause did not shock the Court's conscience, that a non-disparagement clause was not offensive to the Court, and further observed:

> THE COURT: I briefly reviewed the non-disparagement language. I recognize the dispute over it. I take no view on it in and of itself, other than from where I sit, given the context of this case, it seems an entirely reasonable ask for Mr. Moon's client, who hold a nearly $4 million nondischargeable defamation judgment, to insist on the terms of a non-disparagement clause that is agreeable to his client. Mr. Van Horn, if your client thinks it's too broad or will interfere with her business, that's her right, okay, but I don't take issue with their insistence on one.

Jan. 9, 2025 Hr'g Tr.: 79:1-14.

**B.  Debtor's Pattern of Deliberate Violations**

12.     Since the Confirmation Order was entered, Debtor has engaged in no fewer than at least **25** documented and egregious violations of the Non-Disparagement Clause, spanning multiple platforms and escalating in brazenness, notwithstanding no less than three formal written violation notices from Ms. Almánzar's counsel. The violations are described in detail below.

---

background purposes, the factual background set forth in Ms. Almánzar's Motion to Dismiss (Dkt. No. 160) are incorporated herein by reference.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

13.      Debtor's pattern of violations shares a consistent and deliberate structure: (a) post content that unmistakably references Ms. Almánzar or her family members, using scarcely coded language, nicknames, or contextual cues her audience universally understands; (b) generate tens of thousands of views, comments, and advertising revenue; (c) remove the content only after receiving a violation notice from Ms. Almánzar's counsel; and (d) repeat. Debtor's removal of the posts upon notice reflects her awareness that the content violates the Confirmation Order. The removal is not remediation - it is an admission that she has repeatedly posted prohibited content deliberately, calculated that the benefit outweighed the risk, and acted accordingly.

C.  **Specific Violations of the Non-Disparagement Clause of the Confirmation Order**

**Violation No. 1: July 8-9, 2025 – YouTube Live and X posts; First Violation Notice**

14.      On or about July 8, 2025, Debtor published a YouTube livestream (available at https://www.youtube.com/live/kGQHQB23A7g) in which, at approximately the 11-minute, 30-second mark, she made statements claiming that "God is blessing her for Stefon Diggs" in connection with Ms. Almánzar having publicly disclosed her relationship with NFL player Stefon Diggs. The reference to Stefon Diggs – then widely reported to be dating Ms. Almánzar is an unmistakable reference to Ms. Almánzar's personal romantic relationship, in direct violation of Paragraph 14 of the Confirmation Order. In the same livestream, Debtor also referred to spousal support proceedings involving Offset, Ms. Almánzar's husband, who is expressly protected under the Non-Disparagement Clause as Ms. Almánzar's family member.

15.      On July 8, 2025, Debtor posted on her X account (@UNWINEWITHTASHA), which had accumulated 94,500 views, the following: "Nicki handing the internet that biz today…. #11 | Let her COOK." The "#11" reference is a direct, transparent and barely coded

8

but obvious reference to Ms. Almánzar having been named the #11 Best Female Rapper of All Time by Billboard magazine staff – a widely covered event at the time. The post generated immediate responses from commenters that clearly understood #11 referred to Ms. Almánzar. For example, @BardisMedia commented, tagging Ms. Almánzar's verified account (@iamcardib) directly, stating "I think she forgot about that lawsuit." The audience unambiguously understood who "#11" referred to. This constitutes a violation of Paragraph 14(a) of the Confirmation Order.

16.     On or about July 9, 2025, Debtor posted additional content on her Instagram account (@unwinewithtashak) - one of the specific platforms identified by name in the Confirmation Order - again using "#11" as a coded reference to Ms. Almánzar, referencing Ms. Almánzar's then-new single "Outside," and boasting: "I was sued and my network still up, the #WINOS still dranking, I'm on tour, brand deals, & making REASONABLE & Extremely Affordable PR payments for the next 5 years to cover all my debts!" Debtor further declared she was "starting a Free Speech Union" and exhorted her followers to "Stay the course on exposing." This post is a deliberate and compound violation: it references Ms. Almánzar and her music, mocks the court-ordered Plan payments, and signals to Debtor's audience her continuing intent to target Ms. Almánzar. The post's characterization of court-ordered payments as "extremely affordable" is also directly relevant to concerns about the accuracy of Debtor's income disclosures under the Plan (that will be the subject of a separate motion to be filed immediately upon the completion of discovery into the Debtor's inaccurate and misleading quarterly post-confirmation reports and Debtor's apparent avoidance of the "true-up" requirements of the Plan and Confirmation Order).[5]

---

[5] See Article IV(A)(4); Confirmation Order at ¶12.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

17.     On July 9, 2025, Ms. Almánzar's counsel sent the First Violation Notice to Debtor's counsel via email, marked Importance: High, identifying each of the above violations with specificity, quoting the applicable provisions of the Confirmation Order, and demanding removal within 24 hours. Debtor's counsel acknowledged the communication and indicated a willingness to address the violations with Debtor. A true and correct copy of the correspondence related to the First Violation Notice is attached hereto as "**Exhibit A**."

**Violation No. 2: August 7, 2025 – "Ole Girl" X Post; Second Violation Notice**

18.     On August 7, 2025, Debtor published the following post to her X account (@UNWINEWITHTASHA), which received approximately 30,000 views: "Oh Winos… An Anonymous Wino Wine Tip Came in!! Ole girl! she BIG pregnant again! And still married… the new dude got like 3 other babies on the way including her baby… My peeps saw her in the mall… going tf off on the n*gga about other women sending her dms about being pregnant as well! Yall Guess Who in the comments!! 😎🥃 #SipSecretly.

19.     While Debtor did not name Ms. Almánzar in this post, she deliberately invited her followers to "Guess Who in the comments," using the hashtag #SipSecretly - a device designed to circumvent the Non-Disparagement Clause while achieving its exact prohibited effect. The comments on the post confirm that Debtor's audience universally and immediately identified Ms. Almánzar as the subject, with commenters tagging Ms. Almánzar's official account and explicitly naming her. Other commenters referenced "No11," consistent with the thinly coded reference established in the prior round of violations. This "guess who" methodology is a deliberate attempt to launder the prohibited communication through her audience - Debtor does not need to name Ms. Almánzar herself when she knows her followers

10

know exactly who she is talking about and will do it for her. This is precisely the type of "indirect" communication the Confirmation Order expressly prohibits.

20.     On August 8, 2025, Ms. Almánzar's counsel sent the Second Violation Notice to Debtor's counsel via email marked Importance: High, copying the Subchapter V Trustee and the U.S. Trustee. The Second Notice expressly stated: "**Your client is not 'clever' in attempting to obscure the target of her commentary; her intent is transparent, and her disregard for the Court's admonition is apparent. The fact that we have not reached even one quarter of the Plan term without repeated violations speaks volumes about her unwillingness to comply**." Counsel further warned: "**If this conduct continues, we will have no alternative but to seek immediate relief from Judge Grossman, including sanctions and, if warranted, conversion of this Subchapter V case**." A true and correct copy of the correspondence related to the Second Violation Notice is attached hereto as "**Exhibit B**."

**Violation No. 3: February 20-21, 2026 – Offset Multi-Platform Post;
Third Violation Notice**

21.     On or about February 20, 2026, Debtor published content on at least five separate platforms simultaneously – X (@UNWINEWITHTASHA, 31,000 views), Facebook (@unwinewithtashak), Instagram, Threads, and TikTok – concerning Offset, Ms. Almánzar's husband. The post, published as a paid advertisement bearing the branding of both Debtor's channel and Debtor's counsel, Van Horn Law Group, P.A., showed a graphic image of Offset with the caption: "OOP, Offset seems to be having a TIME out with his new girlfriend and his Ex Fling aka Jade." Offset is Ms. Almánzar's spouse and is expressly protected under the Non-Disparagement Clause as one of her "family members." This violation is not subtle or coded - it is a post about Ms. Almánzar's husband on five platforms simultaneously, published as a sponsored advertisement and in direct violation of the Confirmation Order.

11

22.     Critically, Offset was specifically discussed and identified by name during the negotiation of the Non-Disparagement Clause before Plan confirmation. There is therefore no colorable claim that Debtor did not know content about Offset was prohibited. As Ms. Almánzar's counsel stated in the Third Violation Notice: "**Considering Offset was specifically discussed when the terms of the non-disparagement provisions were demanded and incorporated into the Plan and Order, there is no question that Ms. Kebe is deliberately violating the non-disparagement clause**."

23.     On February 21, 2026, Ms. Almánzar's counsel sent the Third Violation Notice, noting that the post appeared on multiple platforms and that the Van Horn Law Group branding visible in the advertisement was "particularly galling." The Third Notice stated unequivocally: "**We are past the point of warning and will be seeking court intervention at this point**." A true and correct copy of the correspondence related to the Third Violation Notice is attached hereto as "**Exhibit C**."

**Violation No. 4: The Morning Hustle Radio Interview – February 27, 2026**

https://youtu.be/B9Vwo_fMbrc?si=vyK-10_Yp1hBTESQ

24.     On or about February 27, 2026, Debtor appeared as a guest on *The Morning Hustle*, a nationally syndicated radio program, for an interview that was broadcast publicly and subsequently reported on by The Morning Hustle's own website and by multiple other entertainment news outlets including HipHopWired. The interview, for which a verbatim transcript has been preserved, contains multiple distinct violations of the Non-Disparagement Clause, described below.

25.     *Offset Commentary (Timestamps 3:08–3:18; 29:50–30:09; 31:04–31:15).* During the interview, Debtor discussed Offset – Ms. Almánzar's husband, who is expressly

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

protected under the Non-Disparagement Clause – on multiple occasions and at length. She described contacting individuals she believed to be associated with Offset and asking them about his alleged sexual conduct and personal relationships. She recounted that Offset had previously sent her a cease-and-desist letter regarding her content about him and then proceeded to republish the substance of that content on a national broadcast. She also discussed whether Offset was "trying to win [Ms. Almánzar] back" and commented on Offset's domestic arrangements, all in the context of a discussion about Ms. Almánzar's personal relationships. Critically, the radio host's own question: "Did Offset send that Valentine's Day gift to the person we will not mention?" confirmed on-air that both the host and Debtor understood that Ms. Almánzar was the subject of the discussion. The Non-Disparagement Clause does not become inapplicable merely because a third-party declines to name the protected individual.

26.     *Recharacterization of the Defamation Judgment (Timestamps 4:42–6:21).* The Debtor publicly stated, on a nationally broadcast radio program, that she "lost because I was broke" and that "the length of your bread determines whether you can win or not." She further stated, with respect to Ms. Almánzar's documented emotional distress and suicidal ideation, to which Ms. Almánzar testified at trial and which the jury credited in awarding damages: "if that was truly the case, then that was not my intention." This conditional phrasing is a public, on-air expression of doubt about the truthfulness of Ms. Almánzar's trial testimony. The Debtor's disingenuous and deliberately dishonest characterization of her defamation loss as a product of financial disadvantage rather than Debtor's intentional and admitted multi-year campaign to emotionally, physically, mentally, and financially harm Ms. Almánzar is not merely a self-serving and false narrative, it is a highly offensive indirect attack on the legitimacy of Ms. Almánzar's judgment, the integrity of the jury's verdict, and the veracity of Ms. Almánzar's

13

documented suffering. This constitutes indirect disparagement of Ms. Almánzar prohibited by Paragraph 14 of the Confirmation Order.

27.     *Plan Payment Admission (Timestamp 14:59–15:26).* Debtor stated publicly that she is "trying to keep my payments low" and is "not working double" to make them, boasting: "Baby, do I look like I'm struggling? I got a publicist here. I got a whole team of entourage that roll with me. No, we're good." This statement is a direct admission that Debtor's Plan payments are being intentionally minimized and that her actual financial condition is materially better than the income projections embedded in the Plan. This is directly relevant to Ms. Almánzar's pending discovery requests and the Rule 2004 examination of Debtor.

28.     The statement "I'm trying to keep my payments low" is another direct admission that Debtor is deliberately suppressing her reported disposable income to minimize Plan payments to Ms. Almánzar. Her boast that she is "not struggling" while maintaining a full team, publicist, and active touring schedule directly contradicts the misleading income projections embedded in the Plan and raises serious questions about whether her quarterly operating reports accurately reflect her disposable income as required by the Confirmation Order. This is not merely a non-disparagement issue – it is evidence of a broader pattern of bad-faith performance of the Plan (which will be addressed in proper context in a separate motion with the Court).

29.     *Undisclosed Third-Party Funding Disclosure (Timestamp 16:17–16:45).* Debtor publicly disclosed, apparently for the first time, that during the settlement negotiations that produced the confirmed Plan, a third party identified as "Now That's TV" or "Now TV" offered to fund a $1.5 million lump-sum settlement payment. The Debtor stated: "My lawyer said, 'I need 1.5 million.' We went and got all the money. Shout out to Now That's TV [who] put up the money." The Debtor acknowledged this disclosure was sensitive, stating "You may get asked to

14

cut this out after it airs." The existence, identity, and financial relationship of this third-party funder was never disclosed to the Court or to Ms. Almánzar's counsel during the bankruptcy proceedings, and raises serious questions regarding undisclosed assets, income, and financial relationships that are directly relevant to Debtor's Plan obligations and the Rule 2004 examination.

30.     *Stefon Diggs Commentary (Timestamps 31:39–34:34).* Debtor discussed Ms. Almánzar's then-romantic partner, Stefon Diggs, extensively and by name, including boasting that "nobody would be talking about Stefon if it wasn't for me," conducting what she described as "a very intensive breakdown of Stefon Diggs," discussing alleged details about Diggs' personal life and associates, and reviewing the contents of a legal complaint filed against Diggs. Debtor further stated she "loves Stefon" and expressed anticipation about his future projects, a demonstration of continuing active interest in generating content about Ms. Almánzar and her personal relationships.

### Violations Nos. 5 -20  – X (Twitter) Posts Regarding Offset – April 10, 2026

31.     Beginning on April 6, 2026, Debtor embarked on a sustained, multi-day campaign of posts on her X account (@UNWINEWITHTASHA) targeting Offset, Ms. Almánzar's husband and a party expressly protected under the Non-Disparagement Clause, in connection with a widely publicized shooting incident involving Offset. Over the course of five consecutive days, from April 6 through April 10, 2026, Debtor published no fewer than sixteen separate posts on X specifically about Offset, his alleged assailant, his physical injuries, his personal activities at the time of the shooting, and related legal and personal proceedings. As established in connection with Violation No. 3, Offset was specifically discussed and identified by name during the negotiation of the Non-Disparagement Clause. There is no colorable claim

15

that Debtor did not know, at the time she published each of the sixteen posts described below, that content about Offset was expressly prohibited. The posts are described in chronological order.

32.    *Violation No. 5 (April 6, 2026).* On April 6, 2026, Debtor published a post on her X account discussing Offset being shot.

See https://x.com/UNWINEWITHTASHA/status/2041333750718398599?s=20.

33.    *Violation No. 6 (April 6, 2026).* Later the same day, Debtor published a second post on her X account discussing Offset being shot outside the Hard Rock Casino. *See* https://x.com/UNWINEWITHTASHA/status/2041342991600627776?s=20.

34.    *Violation No. 7 (April 6, 2026).* On April 6, 2026, Debtor published a third post discussing Offset being shot and reporting that Offset was with Angela Stanton-King at the time of the shooting; disclosing personal and circumstantial details about Ms. Almánzar's husband's whereabouts and companions.

See https://x.com/UNWINEWITHTASHA/status/2041365895730065486?s=20.

35.    *Violation No. 8 (April 7, 2026).* On April 7, 2026, Debtor published a post in which she stated that "Offset wine is pouring and we're not missing a drop" – a gleeful, self-congratulatory reference to Offset's shooting that makes unmistakably clear Debtor views her prohibited commentary about Ms. Almánzar's husband as content to be celebrated and savored by her audience. The post leaves no ambiguity about Debtor's intent or the identity of her subject. *See* https://x.com/UNWINEWITHTASHA/status/2041520191025131838?s=20.

36.    *Violation No. 9 (April 7, 2026).* On April 7, 2026, Debtor published a post discussing Offset's shooting and reporting on Lil Tjay's alleged role in the incident. *See* https://x.com/UNWINEWITHTASHA/status/2041523078614716735?s=20.

16

37.     *Violation No. 10 (April 7, 2026).* On April 7, 2026, Debtor published a post concerning Offset being shot and seen in a wheelchair following the shooting incident. *See* https://x.com/UNWINEWITHTASHA/status/2041568049447268839?s=20.

38.     *Violation No. 11 (April 7, 2026).* On April 7, 2026, Debtor published a post in which she reported that Lil Tjay called Offset a "rat" and further referenced the Offset shooting. See https://x.com/UNWINEWITHTASHA/status/2041588103127711824?s=20.

39.     *Violation No. 12 (April 7, 2026).* On April 7, 2026, Debtor published an additional post about the Offset shooting.

See *https://x.com/UNWINEWITHTASHA/status/2041596852974285009?s=20.*

40.     *Violation No. 13 (April 7, 2026).* On April 7, 2026, Debtor published a post about Lil Tjay shooting Offset.

See https://x.com/UNWINEWITHTASHA/status/2041653550636270015?s=20.

41.     *Violation No. 14 (April 7, 2026).* On April 7, 2026, Debtor published a post about the Offset shooting. This is Debtor's seventh consecutive post about Offset over two days, reflecting a sustained and deliberate editorial focus on Ms. Almánzar's husband that is irreconcilable with any claim of inadvertence or incidental coverage.

See *https://x.com/UNWINEWITHTASHA/status/2041703605971943755?s=20.*

42.     *Violation No. 15 (April 8, 2026).* On April 8, 2026, Debtor published a post discussing 6ix9ine trolling Offset in connection with the shooting incident. *See* https://x.com/UNWINEWITHTASHA/status/2041742635916812437?s=20.

43.     *Violation No. 16 (April 8, 2026).* On April 8, 2026, Debtor published a post about Offset's facial injuries sustained in his altercation with Lil Tjay. *See* https://x.com/UNWINEWITHTASHA/status/2041913488252059981?s=20.

17

44.     *Violation No. 17 (April 8, 2026).* On April 8, 2026, Debtor published a post about Offset being sued by a casino.

See https://x.com/UNWINEWITHTASHA/status/2042061458352066948?s=20.

45.     *Violation No. 18 (April 9, 2026).* On April 9, 2026, Debtor published a post about the Offset shooting.

See https://x.com/UNWINEWITHTASHA/status/2042267609765200055?s=20.

46.     *Violation No. 19 (April 9, 2026).* On April 9, 2026, Debtor published a post discussing Offset's court proceedings and legal winnings.

See https://x.com/UNWINEWITHTASHA/status/2042388126274859430?s=20.

47.     *Violation No. 20 (April 10, 2026).* **Less than an hour before the filing of this Motion**, and notwithstanding the prior violations, violation notices, and the pendency of this very proceeding, Debtor once again violated the Non-Disparagement Clause by publishing a post on her X account engaging in gossip about the shooting of Offset. The frenzied and increased recent pace of violative posting on the part of Debtor reflects a level of calculated contempt for the Confirmation Order and this Court that is beyond dispute. *See* https://x.com/UNWINEWITHTASHA/status/2042681319692357670?s=20.

**Debtor Continues to Violate the Non-Disparagement Clause**

48.     Beyond the specific violations described above, Debtor has made a series of recent public statements – in livestreams, radio appearances, and social media posts – that collectively and unambiguously demonstrate that her violations are willful, that she intends to continue targeting Ms. Almánzar, and that she views the Non-Disparagement Clause as an obstacle to be overcome rather than an obligation to be honored. These statements constitute independent evidence of bad faith and are detailed below.

18

**The GoFundMe Campaign (March 2026)**

49.     In   early   March   2026,   Debtor   launched   a   GoFundMe   campaign (https://www.gofundme.com/f/stand-with-tasha-k-to-move-forward) "*out of spite*"[6] with a stated goal of raising $3.5 million to pay down the Defamation Judgment, expressly describing Ms. Almánzar as a "creditor" and the judgment as a "judgment debt." While technically accurate, the campaign is designed to publicly frame and weaponize Ms. Almánzar as Debtor's financial antagonist and to invite public sympathy and community mobilization in opposition to Ms. Almánzar. The campaign page states that Debtor wants to "close this chapter and move forward without constant legal distractions," and publicly characterizes Ms. Almánzar's legitimate enforcement of the Confirmation Order as an impediment to Debtor's ability to "focus on creating, reporting, and entertaining." This public campaign is itself an indirect communication about Ms. Almánzar strictly prohibited by Paragraph 14 of the Confirmation Order.

50.     The GoFundMe campaign is also directly relevant to Debtor's income disclosure obligations under the Plan. As of the date of this filing, the campaign has raised approximately $15,443 from hundreds of donors. Additionally, Debtor has indicated she is also receiving funds through Social Media platforms like TikTok, Cash App, Venmo, a Kickstarter campaign, merchandise sales, and course offerings – all tied to the campaign around her judgment debt. It is unclear how much revenue has been raised so far, but this revenue must be

---

[6] See Opinionated Truths Podcast, March 23, 2026; recording of Debtor on TikTok: https://x.com/O_Truths/status/2036163925813719397; MoeAI24, Tasha K vs Lakeysha Keysha … Playing Games with GoFundMe? at 0:50: https://www.youtube.com/watch?v=qHoxw2qVwMk.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

disclosed in Debtor's quarterly operating reports and accounted for in her Plan payments, specifically the true-up provisions of the Plan and Confirmation Order.

**The X Spaces Audio (March 10, 2026)**

51. In a recorded X (Twitter) Spaces audio session (available at https://x.com/o_truths/status/2030976926878183882), Debtor publicly complained about being "in chains" as a result of the Non-Disparagement Clause and expressed her desire to have her "freedom of speech restored," making clear she is chomping at the bit to begin her harassment of Ms. Almánzar:

> Play with me and Play God, watch me use God to clear this s*** the f*** up! And then when I do? Guess what? My freedom of speech is f***ing restored! No NDA no nothing! Then what's up? *** What's up? What's up? Ain't no chain! Ain't no chain! I asked God this weekend to break the chain! It's been 9 years!

*See e.g.,* https://www.threads.com/@itsdwightthomas/post/DVtPOCmjkWQ/media

52. These statements are a direct, on-the-record admission that Debtor understands and resents the Non-Disparagement Clause, and that her infrequent compliance is grudging and coerced rather than genuine. A debtor who genuinely intended to honor her obligations (obligations *she agreed to*) under a confirmed plan does not publicly lament them as "chains." This audio, combined with the pattern of violations, demonstrates that Debtor agreed to the Non-Disparagement Clause purely as a tactical maneuver to preserve her bankruptcy case - not because she had any genuine intention of complying with it. And these statements make it clear that Debtor has every intention of resuming the very same harassing and defamatory conduct that resulted in the $3.9 million dollar judgment against her. Apparently, Debtor still believes that she is above the law, consequences, and is invulnerable.

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

**The TikTok Livestream Thanking Nicki Minaj for Donation (March 20, 2026)**

53.    On March 20, 2026, Debtor broadcast a TikTok livestream in which she publicly thanked Nicki Minaj for making a donation of approximately $3,000 to her GoFundMe campaign. By publicly celebrating Ms. Minaj's contribution in connection with the campaign to pay down Ms. Almánzar's judgment – on a live broadcast attended by tens of thousands of viewers – the Debtor deliberately invoked the public's long running fascination with an alleged but uncorroborated Minaj-Almánzar rivalry as a framing device for the event, with full knowledge that her audience would immediately understand the significance of Ms. Minaj conspicuously donating to help the person who defamed Ms. Almánzar. This conduct – orchestrating a public celebration of Ms. Almánzar's purported rival donating to offset Ms. Almánzar's judgment – constitutes indirect commentary about Ms. Almánzar in direct violation of Paragraph 14.

54.    During that same livestream, Debtor made the following unambiguous statements, now widely reported verbatim across multiple mainstream outlets including Complex, Bossip, and HipHopWired:

- "I had a 15-year plan, and I can keep it, but my freedom of speech is being affected, and I don't like that."

- "I got a big mouth, and I gotta use it."

- "It's way too much wine out here for me to be keeping anything from y'all. I keep y'all glasses full, I keep y'all thirsty."

- "We're planning on being out of this bankruptcy in one year, baby."

21

## ARGUMENT

### A.  The Court Has Authority to Enforce the Confirmation Order

55.     A confirmed Chapter 11 plan operates as a binding contract and a final order of the Court. *See* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor . . . and any creditor"). Bankruptcy courts retain inherent authority and express statutory authority under section 105(a) of the Bankruptcy Code to enforce confirmed plans and to sanction parties who violate them. See e.g., *In re Cleveland Imaging and Surgical Hospital, L.L.C.*, 26 F.4th 285, 297 (5th Cir. 2022) (describing court's "firm" conclusion that the doctors knew that the confirmation order barred them from filing this adversary proceeding and holding that doctors acted in bad faith, justifying sanctions); *In re Fatsis,* 405 B.R. 1 (1st Cir. 2009).

56.     Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This authority expressly encompasses the power to enforce compliance with a confirmed plan and to impose sanctions, including monetary penalties and attorneys' fees, where a party's conduct undermines the plan's effectiveness.

57.     The Confirmation Order itself, at Paragraph 22(d) and (f), expressly reserves to this Court jurisdiction to "resolve disputes with respect to any and all injunctions created as a result of confirmation of the Plan" and to "enter such orders as the Court deems necessary or appropriate with respect to enforcement of the Plan." There is no jurisdictional impediment to the relief requested.

### B.  Debtor is in Material Breach of the Non-Disparagement Clause

58.     The evidence set forth above irrefutably establishes that Debtor has materially, knowingly, and repeatedly violated Paragraph 14 of the Confirmation Order. Debtor has:

22

- Published at least 25 documented incidents of content targeting Ms. Almánzar or her family members, across multiple platforms, since the Plan's confirmation;

- Used obvious yet thinly coded language, nicknames ("#11," "ole girl"), and deliberate contextual framing to communicate prohibited content about Ms. Almánzar while maintaining plausible deniability about naming her directly while clearly naming her indirectly;

- Invited her audience to identify the target of her commentary, effectively crowdsourcing the prohibited communication;

- Published violative content across five simultaneous platforms in certain of the posts about Offset, including a paid advertisement bearing her counsel's law firm branding;

- Removed content only after receiving formal violation notices and after the views, advertising revenue, and viral amplification were already complete and the irreparable harm to Ms. Almánzar or her family members irrevocably done; and

- Publicly admitted she resents the Non-Disparagement Clause, views it as "chains," and implies she will continue targeting Ms. Almánzar once her "obligations" terminate.

**C. Debtor's Removal of Posts Confirms Willfulness, Not Compliance**

59.      Debtor's pattern of removing posts upon receiving violation notices is not evidence of good-faith compliance – it is evidence of willfulness. A party who inadvertently violates a court order does not need to receive three formal notices that still do not deter Debtor's continued prohibited conduct. A party who removes prohibited content only after being caught, then repeats the same conduct over and over again, is not attempting to comply. Rather, she is attempting to exploit an enforcement mechanism that solely concerns unknown family members which has no relevance whatsoever to Debtor's posting about Ms. Almánzar and/or her known family members in violation of the Plan and Confirmation Order.

23

60.    Moreover, removal after publication does not undo the harm. Social media content is amplified instantaneously and irreversibly. Screenshots, reposts, and commentary by other content creators proliferate within seconds of publication. Debtor knows this because it is the foundational mechanics and metrics of her business model. Empirical research confirms that removal or retraction of harmful content does not reliably eliminate its impact, as the content continues to circulate through screenshots, reposts, and third-party coverage long after the original post is removed. *See* footnote 1.

61.    The Court should not be misled by Debtor's ritual of removal. The correct legal characterization of her conduct is: post disparaging content about Ms. Almánzar and/or her known family members in plain violation of the Plan and Confirmation Order, profit greatly, dilatorily retract only upon Ms. Almánzar being forced to spend the time and expense of having her counsel send written demand that frequently go unresponded to for days, repeat. Each cycle generates increased advertising revenue and audience engagement for Debtor at Ms. Almánzar's expense. The Non-Disparagement Clause, as Debtor is habitually violating it, has become a new business model rather than a meaningful restraint.

### D.  Sanctions and Attorneys' Fees and Costs are Warranted

62.    Sanctions are appropriate where, as here, a party has continually and willfully violated a court order, repeatedly forced the opposing party to expend resources enforcing compliance, and demonstrated no genuine intention to comply going forward – not to mention expressed an intent to continue prohibited conduct in the future.

63.    Ms. Almánzar has been forced to expend substantial, ongoing, and entirely unnecessary legal fees and costs as a direct result of Debtor's contumacious conduct. Ms. Almánzar's counsel has been required to:

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

- Monitor Debtor's social media accounts on a continuing basis across multiple platforms, including YouTube, X, Instagram, Facebook, Threads, and TikTok;

- Research and document each violation, including identifying the coded or indirect reference to Ms. Almánzar, preserving screenshots, and capturing audience response;

- Draft and send three formal violation notices with specific factual and legal analysis;

- Confer with Debtor's counsel following each notice; and

- Prepare and file this Motion

64.     The Court should also consider additional coercive or remedial sanctions to ensure future compliance, including monetary penalties for future violations, regardless of post-hoc retraction.

65.     Debtor's own public statements confirm this burden will continue indefinitely unless the Court intervenes. Debtor has stated she views the Non-Disparagement Clause as "chains" on her "freedom of speech." Without concrete sanctions that make violations economically painful, Debtor has every incentive to continue precisely as she has been: post in violation of the Plan and Confirmation Order, generate views and revenue, belatedly retract only when caught, and repeat.

66.     The Court should therefore: (1) award Ms. Almánzar her attorneys' fees and costs incurred in monitoring, documenting, and enforcing the Non-Disparagement Clause, from the date of the Confirmation Order through the date of this filing and continuing; and (2) impose a prospective and significant monetary sanction for each future violation of the Non-Disparagement Clause, payable to Ms. Almánzar, regardless of whether or when Debtor subsequently removes the offending content. The removal of content after the fact does not cure

MELAND | BUDWICK
3200 SOUTHEAST FINANCIAL CENTER | 200 SOUTH BISCAYNE BOULEVARD | MIAMI, FL 33131 | T 305-358-6363

the violation; the violation is complete upon publication, and the sanction should attach at that moment.

<b><u>CONCLUSION</u></b>

WHEREFORE Ms. Almánzar respectfully requests that the Court enter an order: (1) requiring Debtor to cease and desist immediately from all conduct in violation of the Non-Disparagement Clause, including the direct, indirect and thinly coded but obvious references to Ms. Almánzar and/or her family members described herein; (2) awarding Ms. Almánzar her attorneys' fees and costs incurred in monitoring, documenting, and enforcing the Non-Disparagement Clause from the date of the Confirmation Order through the conclusion of this Motion, and on a continuing basis for so long as monitoring is required; (3) imposing a prospective monetary sanction for each future violation of the Non-Disparagement Clause, payable immediately to Ms. Almánzar, in an amount the Court deems appropriate as a deterrent, with the sanction attaching upon publication and not subject to mitigation by subsequent removal of the offending content; and (4) granting such other and further relief as the Court deems just and proper, including, if Debtor continues to violate the Confirmation Order following the entry of any enforcement order, dismissal of Debtor's bankruptcy case pursuant to Paragraph 14(c) of the Confirmation Order.

[Remainder of page left blank. Next page is signature page.]

26

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on April 10, 2026, via the Court's Notice of Electronic Filing upon Registered Users set forth on the Electronic Mail Notice List and served via Regular U.S. Mail upon the parties listed on the Manual Notice List.

Respectfully submitted,

By: */s/James C. Moon*
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandbudwick.com
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Belcalis Marlenis Almánzar*

27

**Electronic Mail Notice List**

The following is the list of **<u>parties</u>** who are currently on the list to receive email notice/service for this case.

- **Karen Ann Green**    ANHSOrlans@InfoEx.com
- **Brett D Lieberman**    brett@elrolaw.com, eservice@elrolaw.com;tisha@elbizlaw.com;virginia@elbizlaw.com;denissis@elbizlaw.com
- **James C. Moon**    jmoon@melandbudwick.com, ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;jmoon@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Martin P Ochs**    martin.p.ochs@usdoj.gov
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Raychelle A Tasher**    Raychelle.Tasher@usdoj.gov, bridgett.moore@usdoj.gov;Shannon.Patterson@usdoj.gov
- **Chad T Van Horn**    Chad@cvhlawgroup.com, chad@ecf.inforuptcy.com,chapter7@cvhlawgroup.com,broward@cvhlawgroup.com,chapter11@cvhlawgroup.com,miami@cvhlawgroup.com,cmecf@cvhlawgroup.com,VanHorn.ChadB104447@notify.bestcase.com,ECF@cvhlawgroup.com,van-horn-law
- **Maria Yip**    trustee@yipcpa.com, mmy@trustesolutions.net;cmmy11@trustesolutions.net;F012@ecfcbis.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Ally Bank, c/o AIS Portfolio Services, LLC**
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

**American Express National Bank**
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

**Discover Bank**
PO Box 3025
New Albany, OH 43054

# Exhibit A

| | |
|---|---|
| **From:** | James C. Moon |
| **To:** | Chad Van Horn; Courtney Milam |
| **Cc:** | Lisa Fortune Moore (lisa@themoorefirm.com) |
| **Subject:** | Notice of Prohibited Comment Violations and Demand for Immediate Retraction |
| **Date:** | Wednesday, July 9, 2025 4:58:52 PM |
| **Attachments:** | image001.png |
| | image009.png |
| | image010.png |
| **Importance:** | High |

Chad,

Thanks for the call. I appreciate your willingness to discuss with your client to get this resolved immediately.

As discussed, the prohibited comments that need to be retracted (posts taken down):

1. YouTube: https://www.youtube.com/live/kGQHQB23A7g?si=-8Sp3VTk5RtzxHfQ

   At 11:30 she is claiming God is blessing her for Stefon Diggs after Cardi B went public.  NOTE: From what I can tell from a quick google search, Cardi B and Stefon Diggs are in a relationship. She is also making reference to Offset spousal support request in their divorce proceedings. Clear violations of para. 14 of the Confirmation Order.

2. X account post, July 8, 2025:



The reference to "#11" is Debtor's post is a clear reference to Ms. Almánzar recently being named the #11 'Best Female Rapper of All-Time' by Billboard Staff, and violates Subparagraph 14(a) of the Confirmation Order.

See for example:



chart data ✓
@chartdata

Follow

Cardi B has been named the #11 'Best Female Rapper of All-Time' by Billboard staff.



2:33 PM · Apr 7, 2025 · **722.3K** Views

3. X account post on or about July 9, 2025:



**unwinewithtashak** ✓
🎵 Nicki Minaj • Red Ruby Da Sleeze 🅴

**Tasha K @UNWINEWITHTASHA · 7s** ⋯
Alright Nicki, hol up gal! You ain't suing no damn blog! You do that then NO BLOGS will post you or your music again! Yall gotta take the good with the bad. We can't be biased and only post good about you! #11 KNOWS why the BIG 3 don't post that dated music! (The Shade Room, Neighborhood Talk, & Tasha K! ) Hence why the song is Outside of the charts right now and old songs are carrying an old album being released! | I was sued and my network still up, the **#WINOS** still dranking, I'm on tour, brand deals, & making REASONABLE & Extremely Affordable PR payments for the next 5 years to cover all my debts! | That case is over! We've survived multiple lawsuits over the years! Stay the course on exposing, but Phuck that suing shat!  Any blogger or site being sued by an artist will have me to help them get TF out of it! I'm starting a Free Speech Union! | **#WinoGang**😎🥂

♡ 338   ⬠ 119   ▽                          ▭

unwinewithtashak A note from the Head Winos Desk......
🥂| Free Speech Union Coming Soon....🥂🙏

Once again, she refers quite clearly to Cardi as #11, and she refers to her new single Outside. Moreover, she is referring to the judgment and bankruptcy and is mocking the amount she is paying in the Plan (which suggests her actual income is going to be higher than projected).

As you know, pursuant ¶ 14 of the Confirmation Order [ECF No. 197], Ms. Kebe ("Debtor") is prohibited from publicly making, publishing, or communicating, whether directly or indirectly, any **derogatory, disparaging**, or defamatory **statements, remarks, or comments** ("Prohibited Comment") about Ms. Almánzar, **her family members** (including without limitation her … **husband**) in **any** public form or medium, including but not limited to **social media accounts, websites, blogs, or other communication channels** and including but not limited to those owned or controlled, fully or partially, by the Debtor Parties and/or by Cheickna Kebe and/or Yelen Entertainment, LLC and further including but not limited "unwinewithtashak," The Wine Cellar Podcast," or "Tasha K Live."

Subparagraph 14(a) provides:

a.      The Debtor shall ensure that no content related to Ms. Almánzar and/or her family, whether explicitly or implicitly, will be published or disseminated on any of the Debtor's social media accounts, websites, blogs, or other online communication channels, including without limitation "unwinewithtashak," "The Wine Cellar Podcast," or "Tasha K Live."

Subparagraph 14(c) further provides:

c.      This provision remains in place for the Debtor for the duration of this Subchapter V Plan of Reorganization under of the Bankruptcy Code. Failure to implement a timely cure to any violation within this provision shall constitute a material breach of the Plan and may result in additional legal remedies sought by Ms. Almánzar, including without limitation the legal right to seek dismissal of the Debtor's bankruptcy case or conversion to a Chapter 7 of the Bankruptcy Code.

**Please have your client take down these prohibited comments ASAP, but not later than 24 hours.**

Warm regards,

Jim

JAMES MOON
*pronouns: he/him*
Why I Share My Pronouns



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

jmoon@melandbudwick.com
www.melandbudwick.com
Download  Vcard

# Exhibit B

| | |
|---|---|
| **From:** | James C. Moon |
| **To:** | Chad Van Horn; Courtney Milam |
| **Cc:** | Lisa Fortune Moore (lisa@themoorefirm.com); Maria M. Yip; Martin P. Ochs |
| **Subject:** | SECOND Notice of Prohibited Comment Violations and Demand for Immediate Retraction |
| **Date:** | Friday, August 8, 2025 9:26:51 AM |
| **Attachments:** | image001.png |
| | image009.png |
| | image010.png |
| | image006.png |
| | image007.png |
| | image008.png |
| | 20250807_222522.pdf |
| **Importance:** | High |

Chad and Courtney,

This correspondence serves as a **second notice** of your client's violation of the prohibited comment provisions of the Plan and the Confirmation Order, and a formal demand for immediate retraction.

Yesterday, your client again posted content about Ms. Almánzar in a salacious manner clearly intended to provoke gossip and ridicule, in direct violation of the non-disparagement provisions of the Plan and the Confirmation Order.

Specifically, Ms. Kebe posted the attached material. While you and I may not immediately recognize who "ole girl" refers to, it is evident to her followers that she is referring to Ms. Almánzar. More concerning, she invited her followers to "guess" the subject of her comments —an invitation that, as reflected in the public responses, made her intended reference unmistakable*. **I have included just a fraction of the comments to illustrate the point, but it is clear the commenters universally understand your client is referring to Cardi B.***

This conduct plainly undermines both the letter and the spirit of the non-disparagement clause. It also demonstrates a deliberate effort to skirt compliance by substituting nicknames or codewords for the protected parties, which is equally prohibited.

**Accordingly, we demand that your client:**

**Immediately** remove this content; and

Cease and desist from any further postings—whether direct, indirect, or coded in nature— regarding any individual covered by the non-disparagement provisions in the Plan and Confirmation Order.

Your client is not "clever" in attempting to obscure the target of her commentary; her intent is transparent, and her disregard for the Court's admonition is apparent. The fact that we have not reached even one quarter of the Plan term without repeated violations speaks volumes about her unwillingness to comply.

If this conduct continues, we will have no alternative but to seek immediate relief from Judge Grossman, including sanctions and, if warranted, conversion of this Subchapter V case.

We expect written confirmation by close of business today that the post has been removed and that your client will comply going forward.



←       **Post**       ⋯

**Tasha K**       X.com
@UNWINEWITHTASHA

Oh Winos😳... An Anonymous Wino Wine Tip Came in ‼️ 🥂 Ole girl! she BIG pregnant again! And still married... the new dude got like 3 other babies on the way including her baby..| My peeps saw her in the mall... going tf off on the n*gga about other women sending her dms about being pregnant as well!

Yall Guess Who in the comments!!😎🥂 #SipSecretly

Last edited 8:20 PM · 8/7/25 · **30K** Views

💬 65     🔁 82     ♡ 474     🔖 110     ⬆️

Most relevant replies ⌄

♟ **Eternal** ♦ ✓ @s0urpatchkiid · 9h    ∅ ⋯
🎭 Parody account
that lawsuit gon chug loudly you plucked chicken looking rooster head ass btch

💬 8     🔁     ♡ 15     ᵢₗᵢ 2.2K     🔖    ⬆️







JAMES MOON
*pronouns: he/him*
[Why I Share My Pronouns](#)



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

jmoon@melandbudwick.com
www.melandbudwick.com
Download  Vcard

# Exhibit C

**From:**      James C. Moon
**To:**        Chad Van Horn (chad@cvhlawgroup.com)
**Cc:**        Lisa Fortune Moore (lisa@themoorefirm.com); Maria Yip (MYip@yipcpa.com); Ochs, Martin P. (USTP)
**Subject:**   NOTICE OF PROHIBITED COMMENT VIOLATION AND DEMAND FOR IMMEDIATE RETRACTION
**Date:**      Saturday, February 21, 2026 11:45:23 AM
**Attachments:** image001.png
**Importance:** High

Chad,

This correspondence serves as yet another notice of your client's willful and malicious violation of the non-disparagement provisions of the Plan and the Confirmation Order, and a formal demand for immediate retraction.

Ms. Kebe posted the following to her social media platforms regarding **Offset**, her husband and father to her children. Note that Offset and Cardi B are still married, although separated.

 **Tasha K** ✔ @UNWINEWITHTAS... · 19h   X

(#AD) — OOP, Offset seems to be having a TIME out with his new girlfriend and his Ex Fling aka Jade. 👀

Livebitez

**Offset Spotted In The Club With His New Girlfriend — And Reportedly His Former Ex Fling, Jade!**

VAN HORN LAW GROUP, P.A.
The Law Firm that Cares...About You®

UNWINE WITH TASHA K

💬 25          ↻ 32          ♡ 414          📊 31K          🔖   ↑

https://www.facebook.com/unwinewithtashak/videos/tasha-k-new-headlinemp4/3091305794386170/

https://www.instagram.com/reel/DU_nxaqCMY6/

https://x.com/UNWINEWITHTASHA/status/2024954007551140284

https://www.threads.com/@unwinewithtashak/post/DUyauPSAIkb/video-ad-offsets-girlfriend-showed-off-new-jewelry-and-a-rollie-posting-happy-love

https://www.tiktok.com/@unwinewithtashak/video/7607152761540578573

I'm not sure if it exists on any other platforms like YouTube, but this post is violative regardless of where it is posted, and this notice applies equally to any and all platforms where this violative post was published.

What is particularly galling, is seeing your ads running at the bottom of these violative posts, suggesting you have approved of same.

**Accordingly, we demand that your client:**

**Immediately** remove this content; and

AS WE HAVE WARNED REPEATEDLY, Ms. Kebe must cease and desist from any further postings—whether direct, indirect, or coded in nature—regarding any individual covered by the non-disparagement provisions in the Plan and Confirmation Order. Considering Offset was specifically discussed when the terms of the non-disparagement provisions were demanded and incorporated into the Plan and Order, there is no question that Ms. Kebe is deliberately violating the non-disparagement clause.

We will be bringing these repeated violations to the Court's attention along with the inaccurate quarterly reporting and payment issues shortly. We have tried to deal with these issues without court intervention, but clearly your client is not getting the message. Ms. Kebe knows exactly what she is doing, and seems intent on provoking my client into seeking sanctions against yours.

**We are past the point of warning and will be seeking court intervention at this point.**

Jim

JAMES MOON
*pronouns: he/him*
Why I Share My Pronouns



MELAND | BUDWICK

3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

305-358-6363

jmoon@melandbudwick.com
www.melandbudwick.com
Download  Vcard